1
2
3
4                         UNITED STATES DISTRICT COURT

5                       NORTHERN DISTRICT OF CALIFORNIA

6

7    ORESTES CROSS, et al.,                  Case No.  23-cv-04427-AMO

8                    Plaintiffs,

9          v.                                **ORDER GRANTING MOTION TO
                                             DISMISS WITHOUT LEAVE TO**
10   RLI INSURANCE COMPANY,                   **AMEND**

                     Defendant.              Re:  Dkt. No. 9
11

12

13         Before the Court is Defendant RLI Insurance Company's motion to dismiss.  Plaintiffs

14   Orestes Cross and Veronica O'Neill oppose the motion.  Having considered the parties' papers,

15   the relevant legal authority, and the arguments advanced by counsel during the hearing held on

16   February 1, 2024, the Court GRANTS the motion WITHOUT LEAVE TO AMEND, for the

17   reasons set forth below.

18   **I.       BACKGROUND**

19         **A.       Factual Background**[1]

20         This insurance coverage dispute arises from RLI's alleged failure to provide Plaintiffs

21   underinsured motorist coverage in connection with a 2017 car accident.

22         On December 2, 2017, Cross was driving with his wife, O'Neill, and their two minor

23   children.  ECF 1 at 6-14 (Compl.) ¶ 12.  Parham Adib, driving a vehicle owned by his father,

24   Mohammadreza Adib, ran a red light and "T-boned" Plaintiffs' vehicle.  *Id.*  Plaintiffs were

25   severely injured.  *Id.*

26

27   _____

     [1] The factual background is based on the allegations in Plaintiffs' complaint, which the Court
28   takes as true for the purpose of the instant motion.  *See Manzarek v. St. Paul Fire & Marine Ins.
     Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

United States District Court
Northern District of California

Plaintiffs sued Parham and his father in state court (the "Underlying Matter").  *Id.* ¶ 14.

The Adibs were covered for the accident under a State Farm liability insurance policy (the "State

Farm Policy").  *Id.* ¶ 15.  The State Farm Policy provides bodily injury liability coverage of up to

$1,000,000 per person and $1,000,000 per accident.  ECF 10-2 (State Farm Policy) at 3.  Although

Plaintiffs' damages exceeded the coverage limits under the State Farm Policy, the parties settled

the Underlying Matter for an undisclosed amount.  Compl. ¶¶ 16-17.

In addition to the Adibs' State Farm Policy, two of Plaintiffs' insurance policies were in

effect on the date of the accident.[2]  *Id.* ¶¶ 6-11.  The first policy was Plaintiffs' auto insurance

policy, issued by United Financial Casualty Company, which is part of the Progressive Group of

Insurance Companies.  *Id.* ¶ 6.  This policy provides uninsured/underinsured motorist coverage for

bodily injury in the amount of $250,000 per person and $500,000 per accident.  ECF 10-3

(Progressive Policy) at 3.  The relevant insuring agreement provides:

> If **you** pay the premium for this coverage, **we** will pay for damages
> that an **insured person** is legally entitled to recover from the owner
> or operator of an **uninsured motor vehicle** or **underinsured motor
> vehicle** because of **bodily injury**:
> 1.  sustained by an **insured person**;
> 2.  caused by an accident; and
> 3.  arising out of the ownership, maintenance or use of an
> **uninsured motor vehicle** or **underinsured motor vehicle**.
>
> **We** will pay for damages an **insured person** is entitled to recover
> from the owner or operator of an **underinsured motor vehicle** only
> after the limits of liability under all applicable bodily injury liability
> bonds and policies have been exhausted by payment of judgments or
> settlements.

Progressive Policy at 18 (emphasis in original).  The Progressive Policy defines an "underinsured

motor vehicle" as:

> [A] land motor vehicle or trailer to which a bodily injury liability
> bond, policy, cash deposit, or self-insurance certificate applies at the

---

[2] Because Plaintiffs reference all three policies in the complaint, the Court takes judicial notice of
the policy documents under the incorporation by reference doctrine.  *See Knievel v. ESPN*, 393
F.3d 1068, 1076-77 (9th Cir. 2005) (holding that incorporation by reference doctrine extends "to
situations in which the plaintiff's claim depends on the contents of a document, the defendant
attaches the document to its motion to dismiss, and the parties do not dispute the authenticity of
the document, even though the plaintiff does not explicitly allege the contents of that document in
the complaint") (citations omitted).

1        time of the accident, but the sum of all such bonds, policies, deposits
2        or self-insurance is less than the coverage limit for
         Uninsured/Underinsured Motorist Coverage shown on the
         **declarations page**.

3  Progressive Policy at 19 (emphasis in original).

4        The second policy in place at the time of the accident was Plaintiffs' personal liability

5  policy, issued by RLI.  *Id.* ¶ 9.  This "RLI Policy" provides uninsured/underinsured motorist

6  coverage through an "Excess Uninsured/Underinsured Motorist Endorsement."  ECF 10-1 (RLI

7  Policy) at 3, 15-16.  The endorsement provides, in pertinent part:

8        **Excess Uninsured/Underinsured Motorist Coverage**.

9        We will pay those sums which you or your **Relative** is legally
10       entitled to recover as damages from an uninsured or underinsured
         motorist because of **Bodily Injury** to which this insurance applies,
         caused by an **Accident** and in excess of all **Underlying Insurance**
11       up to and not to exceed the Excess Uninsured/Underinsured
         Motorists Limit of Coverage shown on the Declarations.  We will
12       pay only in excess of the **Uninsured/Underinsured Motorist**
         **Coverage** required to be maintained under the Required **Basic**
13       **Policies** as set forth in the Declarations.  This coverage, except
         where provisions to the contrary appear in this policy including all
14       endorsements, is subject to all the conditions, agreements,
         definitions, exclusions and limitations of, and shall follow the
15       Required Basic Uninsured/Underinsured Motorist policy in all
         respects.
16
         This insurance applies only if:
17
18       a.   The policy limits of any and all **Underlying Insurance** have
              been exhausted by payment of judgments or settlements.

19       b.   You and your **Relatives** maintain Uninsured Motorist Coverage
20            and Underinsured Motorist Coverage at limits equal to or
              greater than the Minimum Limits of Coverage as shown in the
              Required **Basic Policies** section of the Declarations for such
21            coverages.  Failure to maintain the applicable Minimum Limit
              of Coverage as shown in the Required **Basic Policies** section of
22            the Declarations for Uninsured/Underinsured Motorists
              eliminates coverage under this Excess Uninsured/Underinsured
23            Motorist Coverage.

24 RLI Policy at 15.  The endorsement defines "Underlying Insurance" as "the Required Basic

25 Uninsured/Underinsured Policy as shown in the Declarations and any other applicable

26 liability, uninsured and/or underinsured motorist coverage, and any bond."  RLI Policy at 16.

27 The required policy was to provide minimum uninsured/underinsured motorist coverage of

28 $250,000 per person and $500,000 per occurrence.  *Id.* at 4.

United States District Court
Northern District of California

**B.     Procedural Background**

After RLI denied Plaintiffs' claim for underinsured motorist coverage, on July 19, 2023, Plaintiffs filed their complaint against RLI in Contra Costa Superior Court.  ECF 1 at 6-14.  They assert claims for (1) declaratory relief, (2) breach of contract, and (3) breach of the covenant of good faith and fair dealing.  *Id.* ¶¶ 20-22, ¶¶ 23-27, ¶¶ 28-34.  Among other relief, Plaintiffs seek a judicial determination that they are entitled to underinsured motorist coverage under the RLI Policy.  *Id.* at 13.

RLI removed the action to this Court on August 28, 2023.  ECF 1 at 1-4 (Notice of Removal).  It then moved to dismiss the complaint on September 1, 2023.  ECF 9 (Mot.).  Plaintiffs filed their opposition to the motion on November 3, 2023.  ECF 20 (Opp.).  RLI's reply followed on November 17, 2023.  ECF 21 (Reply).  The Court held a hearing on the motion on February 1, 2024.  ECF 23.

**II.     LEGAL STANDARDS**

**A.     Motion to Dismiss**

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the claims alleged in the complaint.  *Ileto v. Glock*, 349 F.3d 1191, 1199-1200 (9th Cir. 2003).  Federal Rule of Civil Procedure 8 requires a complaint to include "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  A complaint that fails to meet this standard may be dismissed pursuant to Rule 12(b)(6).

To overcome a motion to dismiss brought under Rule 12(b)(6), the factual allegations in the plaintiff's complaint "'must . . . suggest that the claim has at least a plausible chance of success.'"  *Levitt v. Yelp! Inc.*, 765 F.3d 1123, 1135 (9th Cir. 2014) (quoting *In re Century Aluminum Co. Sec. Litig.*, 729 F.3d 1104, 1107 (9th Cir. 2013) (alterations in original)).  In ruling on the motion, courts "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party."  *Manzarek*, 519 F.3d at 1031.

"[A]llegations in a complaint . . . may not simply recite the elements of a cause of action [and] must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively."  *Levitt*, 765 F.3d at 1135 (quoting *Starr v. Baca*, 652

United States District Court
Northern District of California

1   F.3d 1202, 1216 (9th Cir. 2011)).  The court may dismiss a claim "where there is either a lack of a

2   cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal claim."

3   *Hinds Invs., L.P. v. Angioli*, 654 F.3d 846, 850 (9th Cir. 2011) (citing *Johnson v. Riverside*

4   *Healthcare Sys., LP*, 534 F.3d 1116, 1121 (9th Cir. 2008)).  "[T]he non-conclusory 'factual

5   content' and reasonable inferences from that content must be plausibly suggestive of a claim

6   entitling the plaintiff to relief."  *Moss v. U.S. Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009).

7        When deciding whether to grant a motion to dismiss, the court generally "may not consider

8   any material beyond the pleadings."  *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d

9   1542, 1555 n.19 (9th Cir. 1990).  However, the court may consider material submitted as part of

10  the complaint or relied upon in the complaint and may also consider material subject to judicial

11  notice.  *See Lee v. City of Los Angeles*, 250 F.3d 668, 688-89 (9th Cir. 2001).

12       **B.        Insurance Contract Interpretation**

13       Although "insurance contracts have special features, they are still contracts to which the

14  ordinary rules of contractual interpretation apply."  *Yahoo Inc. v. Nat'l Union Fire Ins. Co. of*

15  *Pittsburgh, PA*, 14 Cal. 5th 58, 67 (Cal. 2022) (internal quotations and citation omitted).  "The

16  fundamental rules of contract interpretation are based on the premise that the interpretation of a

17  contract must give effect to the mutual intention of the parties . . . at the time the contract is

18  formed."  *E.M.M.I. Inc. v. Zurich American Ins. Co.*, 32 Cal. 4th 465, 470 (2004) (internal

19  quotations and citations omitted).  "Such intent is to be inferred, if possible, solely from the

20  written provisions of the contract."  *Id.*  "The clear and explicit meaning of these provisions,

21  interpreted in their ordinary and popular sense, unless used by the parties in a technical sense or a

22  special meaning is given to them by usage, controls judicial interpretation."  *Bay Cities Paving*

23  *and Grading Inc. v. Lawyers' Mutual Ins. Co.*, 5 Cal. 4th 854, 867 (1993) (internal quotations and

24  citations omitted).  However, "[i]f the terms are ambiguous [i.e., susceptible of more than one

25  reasonable interpretation], we interpret them to protect the objectively reasonable expectations of

26  the insured."  *Yahoo*, 14 Cal. 5th at 67 (internal quotations and citations omitted; modifications in

27  original).  "When coverage is in dispute, the initial burden is on the insured . . . to prove that its

28  claim falls within the scope of potential coverage."  *Id.* at 68 (citation omitted).

United States District Court
Northern District of California

III.     DISCUSSION

RLI seeks dismissal of all three claims in Plaintiffs' complaint on two grounds.  Mot. at 13-15.  First, RLI contends that the Adibs' vehicle was not an underinsured motor vehicle within the plain meaning of the RLI Policy.  *Id.* at 13-14.  Second, RLI contends that Plaintiffs did not exhaust the limits of all Underlying Insurance, which is an express condition for coverage under the RLI Policy.  *Id.* at 14-15.  The Court addresses RLI's first argument below.  It does not reach RLI's second argument because the lack of an underinsured motor vehicle is an independently sufficient basis to dismiss Plaintiffs' complaint without leave to amend.

**A.     Whether the Adibs' vehicle was an underinsured motor vehicle.**

1.     Whether the RLI Policy incorporates the definition of "underinsured motorist" from the Progressive Policy.

Before turning to the core issue—whether the Adibs' vehicle was an underinsured motor vehicle within the meaning of the RLI Policy—the Court must first resolve the parties' dispute about the applicable definition of "underinsured motor vehicle."

RLI contends that its Policy borrows the definition of "underinsured motor vehicle" from the Progressive Policy.  Mot. at 13; Reply at 11-12.  In support, it points to the following language in the RLI Policy:  "This coverage, except where provisions to the contrary appear in this policy including all endorsements, is subject to all the conditions, agreements, definitions, exclusions and limitations of, and shall follow the Required Basic Uninsured/Underinsured Motorist policy in all respects."  Reply at 12, *see also* Progressive Policy at 15.

This clear and explicit language supports RLI's reading of the RLI Policy.  Indeed, during oral argument, Plaintiffs conceded that the RLI Policy contains no stand-alone definition of the term "underinsured motor vehicle."  Plaintiffs also conceded that the RLI Policy is a "follow form policy."  These concessions confirm the only reading of the RLI Policy supported by its clear and unambiguous language.  That is, that the RLI Policy is subject to the "conditions, agreements, definitions, exclusions and limitations" and "follow[s] the Required Basic Uninsured/Underinsured Motorist [i.e., the Progressive Policy] in all respects."  *See Komorsky v. Farmers Ins. Exch.*, 33 Cal. App. 5th 960, 971 (2019) ("A following form excess policy has the

United States District Court
Northern District of California

same terms and conditions as the underlying primary policy[, and] . . . generally will contain the same basic provisions as the underlying policy, with the exception of those provisions that are inconsistent with the excess policy."); *Haering v. Topa Ins. Co.*, 244 Cal. App. 4th 725, 734 (2016) ("A following form excess policy has the same terms and conditions as the underlying primary policy."). *See also* Hon. H. Walter Croskey (Ret.), et al., California Practice Guide: Insurance Litigation Ch. 1-C ¶ 1:43 (The Rutter Group 2023) ("An excess or umbrella policy may contain its own insuring agreement, exclusions and conditions; or, alternatively, it may 'follow the form' of the underlying policy by *incorporating by reference* some or all of the insuring agreement, exclusions or conditions contained in that policy (e.g., an underlying primary, umbrella or excess policy).") (emphasis in original).  Any other reading, including the one Plaintiffs urge here, would require the Court to ignore a key provision of the RLI Policy, even though it is harmonious with the rest of the policy's terms.  That result is inconsistent with California law.  *See AIU Ins. Co. v. Superior Ct.*, 51 Cal. 3d 807, 827 (1990) (reaffirming the fundamental rule that one cannot read a policy in such a way that would render some of its words meaningless).

Accordingly, the RLI Policy incorporates the Progressive Policy's definition of "underinsured motor vehicle," which reads:

> [A] land motor vehicle or trailer to which a bodily injury liability bond, policy, cash deposit, or self-insurance certificate applies at the time of the accident, but the sum of all such bonds, policies, deposits or self-insurance is less than the coverage limit for Uninsured/Underinsured Motorist Coverage shown on the **declarations page**.[3]

Progressive Policy at 19 (emphasis in original).  Applying that definition, the Court now turns to whether the Adibs' vehicle meets it.

2. Whether the Adibs' liability policy limits were less than Plaintiffs' underinsured policy limits.

Determining whether a vehicle is underinsured "is done by simply comparing the limits" of the tortfeasor's policy with those of the injured party.  *Explorer Ins. Co. v. Gonzalez*, 164 Cal.

---

[3] The declarations page lists uninsured/underinsured motorist coverage limits of $250,000 per person and $500,000 per accident.  Progressive Policy at 3.

United States District Court
Northern District of California

App. 4th 1258, 1264 (2008) (citation omitted).  "If the liability limit of the tortfeasor's policy is not an amount *less* than the uninsured/underinsured motorist limits of the injured person's policy, that ends the inquiry, and the injured person's uninsured/underinsured coverage is not triggered." *Id.*  Courts have thus repeatedly held that underinsured motor benefits are not triggered when an injured party's underinsured motorist coverage limits equal or exceed the liability limits of the tortfeasor's policy.  *See, e.g.*, *Elwood v. Aid Ins. Co.*, 880 F.2d 204, 207 (9th Cir. 1989) (underinsured motorist coverage was never triggered because the tortfeasor's policy limits equaled the plaintiffs' underinsured motorist coverage limits); *Schwieterman v. Mercury Cas. Co.*, 229 Cal. App. 3d 1044, 1045-46 (1991) (affirming summary judgment in favor of the insurer where the plaintiff sought underinsured motorist coverage though his uninsured motorist benefits were the same as the tortfeasor's liability limits); *State Farm Mut. Auto. Ins. Co. v. Messinger*, 232 Cal. App. 3d 508, 514 (1991) (same).

That is the case here, and the Court rejects Plaintiffs' arguments to the contrary.  The Adibs' State Farm Policy provided for $1 million in liability coverage.  *See* State Farm Policy at 3. Plaintiffs' Progressive Policy offered $500,000 in underinsured motorist coverage per accident. *See* Progressive Policy at 3.  In line with the weight of authority cited above, the Adibs' vehicle was not underinsured and consequently, no underinsured motorist coverage is triggered. Accordingly, dismissal is appropriate because Plaintiffs cannot allege that the Adibs' vehicle is an underinsured motor vehicle within the plain meaning of the RLI Policy.

## IV.    CONCLUSION

For the reasons set forth above, the Court GRANTS RLI's motion to dismiss.  During oral argument, Plaintiffs conceded that further amendment would be futile on the purely legal question resolved by this order.  Accordingly, the dismissal is WITHOUT LEAVE TO AMEND.  The Clerk shall enter judgment consistent with this order and close the file in this matter.

**IT IS SO ORDERED.**

Dated: February 14, 2024

_____
**ARACELI MARTÍNEZ-OLGUÍN**
**United States District Judge**

8